**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Jorge Luis Carrillo-Moreno,<br><br>Defendant. | No. CR-22-00791-001-TUC-RM (DTF)<br><br>**ORDER** |

On October 28, 2022, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation (R&R) (Doc. 34) recommending that this Court deny Defendant's Motion to Dismiss Indictment. (Doc. 34.) On November 10, Defendant filed an Objection (Doc. 35) and on December 19, 2022, after an extension of time, the Government responded to the Objection (Doc. 42). For the following reasons, the Court will overrule the R&R and grant dismissal of the Indictment.

I.   **Background**[1]

In 2012, Defendant entered the United States on foot through the southern border. He was found over fifty miles from the international border. In an expedited removal proceeding, Border Patrol Agent Joseph Callies determined Defendant was inadmissible pursuant to Section 212[2](a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). On October 1, 2012, Defendant was removed to Mexico through Douglas, Arizona.

---

[1] The parties do not dispute the factual background of this case and the Court will adopt the background as set forth in the R&R. (*See* Doc. 34 at 1-2.)
[2] Codified at 8 U.S.C. § 1182.

Between May 2015 and January 2021, Defendant was removed from the United States multiple times.[3] On March 21, 2022, Border Patrol agents apprehended Defendant, along with a group of other individuals in Arizona close to the international border. Defendant admitted he had recently crossed the border illegally. On April 20, 2022, the Grand Jury returned a one-count indictment alleging Defendant reentered the United States without permission in violation of 8 U.S.C. § 1326(a).

Defendant filed a Motion to Dismiss Indictment. (Doc. 12.) Defendant argues that the Indictment should be dismissed based on a collateral attack of his 2012 expedited removal order. (*Id*. at 3-4.) Defendant argues that he was not inadmissible under 8 U.S.C. § 1182(a)(7),[4] as alleged in the expedited removal notice and order, because he did not make an "application for admission" at the border in 2012 but rather entered the United States illegally while attempting to avoid detection. (*Id*. at 8.) Defendant argues that he should have been processed for removal under 8 U.S.C. § 1229 and § 1229a, which would have provided him with notice of certain rights, including a Notice to Appear documenting the grounds for his removal, his right to contest his removal, his right to counsel, his right to a hearing before an immigration judge, and the right to appeal his removal. (*Id*. at 8-9.) Defendant argues that the failure to place him in removal proceedings, rather than expedited removal proceedings, violated his right to due process, and therefore the subsequent re-instatements of the 2012 removal order, including the October 8, 2021 removal that is the subject of the Indictment, violate due process. (*Id*. at 9.) Defendant further argues that his placement in expedited removal proceedings prejudiced him because he would have qualified for voluntary departure had he been removed under 8 U.S.C. §1229a. (*Id*.) Defendant argues, in sum, that the expedited removal order violated his due

---

[3] All other removals after Defendant's 2012 removal are reinstatements of the 2012 order and are not at issue here.

[4] 8 U.S.C. § 1182(a)(7) provides, in relevant part, that "any immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document . . . is inadmissible."

process rights, which prejudiced him and was fundamentally unfair.

## II. Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation"). Failure to object to the findings and recommendations of the magistrate judge "waives a party's right to review." Fed. R. Crim. P. 59(b)(2).

## III. Report and Recommendation

Magistrate Judge Ferraro's R&R recommends denying the Motion to Dismiss Indictment. (Doc. 34.) The R&R sets forth the relevant standard for a defendant collaterally attacking a removal order under § 1326(d) as follows: (1) the defendant exhausted his administrative remedies; (2) the removal proceedings unfairly denied him judicial review; and (3) the entry of the removal order was fundamentally unfair. (*Id.* at 2-3); *see United States v. Vega-Ortiz*, 822 F.3d 1031, 1034 (9th Cir. 2016). Fundamental unfairness has two components: (1) a violation of due process rights from defects in the removal proceeding and (2) actual prejudice. *Id.*

The R&R finds that the expedited removal proceeding provided no available administrative remedies, and that the Government has effectively conceded the first prong of the *Vega-Ortiz* standard. (*Id.* at 3.) The R&R further finds the Government's argument as to the second prong, that Defendant could have obtained judicial review following the 2012 removal order, unavailing based on applicable case law. (*Id.* at 3-4) Specifically, the R&R concludes that Defendant could not have challenged his expedited removal via subsequent criminal or removal proceedings, or during reinstatement of the 2012 removal. (*Id.*) Nor could Defendant have challenged it through a habeas corpus petition, as habeas review of expedited removal orders is very limited. (*Id.* at 4.) Accordingly, the R&R finds that the expedited removal proceeding deprived Defendant of judicial review. (*Id.*)

The R&R's analysis focuses on the third prong, fundamental unfairness, which is

also the subject of Defendant's argument on objection. (*Id.* at 4-8.) The R&R rejects Defendant's argument that he should not have been placed in an expedited removal proceeding because no "application for admission" occurred pursuant to § 1182(a)(7). (*Id.*) The R&R finds that, while Defendant was an "applicant for admission" pursuant to 8 U.S.C. § 1225(a)(1), it is less clear whether he made an "application for admission" in 2012 within the meaning of § 1182(a)(7)(A). (*Id.*) Analyzing precedent from the Ninth Circuit Court of Appeals in *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) and from the Supreme Court in *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959 (2020), the R&R concludes that the reasoning of *Thuraissigiam* is more applicable and persuasive than that of *Torres*. (*Id.*) Specifically, the R&R finds that, although the *Torres* court found the non-citizen not removable under § 1182(a)(7) due to not having submitted an "application for admission" at the time when she "submit[ted] an application to physically enter into the United States," the specific facts of that case call for it to be narrowly read. (*Id.*) On the other hand, the R&R found persuasive the language in *Thuraissigiam* stating that "an alien who arrives at a port of entry . . . must apply for admission" and "an alien like respondent who is caught trying to enter at some other spot is treated the same way." (*Id.*); *see Thuraissigiam*, 140 S. Ct. at 1964. Thus, the R&R concludes that a non-citizen need not arrive at a port of entry to be treated as applying for admission within the meaning of § 1182(a)(7)(A). The R&R further finds that policy considerations and rules of statutory construction support its analysis. (*Id.*) Specifically, the R&R finds that non-citizens attempting to enter outside the port of entry should be considered to have applied for admission within the meaning of § 1182(a)(7)(A) because, if they were not subject to expedited removal, the immigration system would be overwhelmed. (*Id.* at 8.) The R&R finds that Defendant's proposed reading of the statute would render the portion of § 1225(b)(1)(A) stating that it applies to aliens who have not shown that they have been present in the United States continuously for two years prior to the determination of inadmissibility, meaningless. (*Id.*) The R&R does not discuss the case of *United States v. Mayren*, 591 F. Supp. 3d 692, 693 (C.D. Cal. 2022), upon which Defendant relies.

- 4 -

Defendant objects to the R&R's finding that his removal order was not fundamentally unfair. (Doc. 35.) Defendant argues that a removal on illegal grounds is sufficient to show a due process violation and prejudice even if the noncitizen was otherwise removable. (*Id*. at 3-4.) Defendant further argues that, under *Torres*, the phrase "at the time of application for admission" refers to the "particular point in time when a noncitizen submits an application to physically enter the United States" and therefore individuals who are physically present in the United States and have not filed an application for entry at the border are not considered applicants for admission. (*Id*. at 4-5.); 976 F.3d at 924. Defendant argues that his 2012 removal was accordingly invalid and "removal on illegitimate grounds is enough to show prejudice," even if a non-citizen was otherwise removable. (*Id*. at 7); *see United States v. Ochoa-Oregel*, 904 F.3d 682, 686 (9th Cir. 2018). Defendant contends that, had he been placed in removal proceedings under 8 U.S.C. § 1229a, he likely would have qualified for and been granted voluntary departure. (*Id*. at 8-9.)[5] Defendant reiterates his argument regarding footnote 13 of the *Torres* decision, emphasizing the Court's rejection of the Government's argument that § 1225(b)(1)(A)(i) authorizes expedited removal of non-citizens who are present in the United States but not physically present at the border. (*Id*. at 9-10.) Defendant relies on the language of footnote 13 stating that "no case has held that § 1225(b)(1) allows an immigration officer to apply § 1182(a)(7) to noncitizens who are physically but unlawfully present in the United States." (*Id*. at 10.)

The Government's response likewise focuses on the third prong of fundamental unfairness and prejudice. (Doc. 42.) The Government contends that the *Torres* decision is distinguishable from the instant case because Ms. Torres had been legally present in the United States[6] for years before her removal was initiated. (*Id*. at 2.) Thus, the Government argues, the *Torres* court's conclusion that Ms. Torres's due process rights had been violated

---

[5] Defendant points to three other legal mechanisms by which Defendant, and those similarly situated can be removed: "stipulated removal" pursuant to 8 U.S.C. § 122a(d); pre-hearing voluntary departure pursuant to § 1229c(a)(1); and Title 42. (*Id*. at 8-9.)
[6] As discussed below, Ms. Torres was a resident of the Commonwealth of the Northern Mariana Islands.

was dependent on the fact that Ms. Torres had existed lawfully in the United States prior to her removal upon a retroactive application of the relevant immigration laws. (*Id*. at 2-3.) The Government cites to the Department of Homeland Security ("DHS") regulation[7] issued under § 1225(b)(1)(A)(iii), which authorized expedited removal of noncitizens illegally in the country who are apprehended within 14 days of their illegal entry and within 100 miles of the border. (*Id*. at 5.) The Government argues that, while *Torres* held that a noncitizen makes an "application for admission" when "physically at the border," *see* 976 F.3d at 929, n. 13, the relevant DHS regulation provides that noncitizens apprehended shortly after entry are treated as if they are at the border. (*Id*.) The Government contends that *Thuraissigiam*, not *Torres*, controls the instant case. (*Id*. at 5-6.) In support, the Government cites cases from the Third and Fourth Circuit Courts of Appeals stating that noncitizens apprehended soon after entering the United States are treated, for due process purposes, as if they had been seeking admission at the border. (*Id*. at 6.) Essentially, the Government argues that noncitizens apprehended near the border and soon after entry are, or should be, afforded less due process protection than those who have been in the United States longer, and therefore, given the circumstances of Defendant's apprehension and removal, his expedited removal did not violate due process. (*Id*. at 6.) The Government cites *Guerrier v. Garland*, 18 F.4th 304, 306 (9th Cir. 2021), regarding the Congressionally provided "expedited removal procedures for certain noncitizens, including those who (1) are inadmissible because they lack a valid entry document, (2) have not been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility, and (3) are among those whom the Secretary of Homeland Security has designated for expedited removal." *Guerrier*, 18 F.4th at 306; *see also Alvarado-Herrera v. Garland*, 993 F.3d 1187, 1190 (9th Cir. 2021) (expedited removal proceedings apply to noncitizens apprehended "at or near the border soon after entry"); *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1146, n. 1 (9th Cir. 2021) (under DHS regulations, expedited removal applies to noncitizens not in the United States

---

[7] 8 C.F.R. § 253.3.

for two years prior to the date of determination of inadmissibility).

### IV. Applicable Law

#### a. Statutes

Section 1182(a)(7) of Title 8 of the United States Code provides, in defining classes of aliens who are ineligible for admission, that "any immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document . . . is inadmissible."

Section 1225 of Title 8 of the United States Code governs expedited removal proceedings. It provides that an alien is treated as an applicant for admission if he is present in the United States and has not been admitted, or if he arrives in the United States, whether or not at a designated port of arrival. 8 U.S.C. § 1225(a)(1). If an immigration officer determines that an alien arriving in the United States is inadmissible under section 1182(a)(6)(C) or 1182(a)(7), "the officer shall order the alien removed from the United States without further hearing or review" unless the alien claims asylum. 8 U.S.C. § 1225(b)(1)(A)(i). The statute further applies to an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility[.]" 8 U.S.C. § 1225(b)(1)(A)(iii)(II).

#### b. Cases

"A defendant charged with illegal reentry has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *United States v. Mayren*, 591 F. Supp. 3d 692, 695 (C.D. Cal. 2022) (citing *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). To attack a removal order, a defendant must show that "(1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for

judicial review; and (3) the entry of the order was fundamentally unfair." *Id*. at 695-96 (citing 8 U.S.C. § 1326(d)) (internal quotation marks and alterations omitted). "To satisfy the third prong – that the order was fundamentally unfair – the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice." *Id*. (citing *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014), *abrogated by Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020)) (internal quotation and alteration marks omitted).

In *Thuraissigiam*, the non-citizen[8] was apprehended 25 yards from the border after entering the country illegally and not through a port of entry. 140 S. Ct. at 1964. The Court identifies "inadmissible" and therefore "removable" non-citizens as including those who "lack a valid entry document at the time of application for admission," pursuant to § 1182(a)(7)(A). *Id*. The Court stated that a non-citizen arriving at a port of entry must apply for admission, and that one "who is caught trying to enter at some other spot is treated the same way" pursuant to § 1225(a)(1). *Id*. "The usual removal process involves an evidentiary hearing before an immigration judge," at which an alien may argue that he should not be removed. *Id*. at 1964. However, an applicant is subject to expedited removal if the applicant "(1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal." *Id*. (citing §§ 1225(a)(1), (b)(1)(A)).

In *Torres*, an individual who had resided in the Commonwealth of the Northern Mariana Islands for over a decade prior was ordered removed[9] on the grounds that she did not possess a valid entry document at the time of her application for admission into the United States, in violation of § 1182(a)(7)(a). 976 F.3d 918 at 920. Torres challenged the removal order on the grounds that because she had not yet submitted an application for

---

[8] The individual was detained for expedited removal but claimed asylum.
[9] The INA was applied to the Commonwealth of the Northern Mariana Islands on November 28, 2009.

- 8 -

admission, she was not removable under this provision. *Id*. at 922-23. The Ninth Circuit overruled its opinion in *Minto v. Sessions*, 854 F.3d 619 (9th Cir. 2017), clarifying that it had previously conflated the phrase "applicant for admission" under § 1225(b)(1) with "application for admission." *Id*. at 927. In construing the phrase "application for admission," the Court determined that the time of application for admission is the moment when a non-citizen "seeks permission to physically enter United States territory, regardless of whether the noncitizen is seeking entry from outside the country or inside the country at a port of entry." *Id*. at 924-25. Reading § 1182 in conjunction with § 1181(a), which lists acceptable types of identification, the Court determined that "at the time of application for admission" means "the moment of applying for entry at the border." *Id*. at 925. The Court concluded that § 1182(a)(7)(A) supports this reading, finding that "[b]ecause all of the documents listed in connection with the phrase 'at the time of application for admission' are of the type needed to lawfully cross into the United States from another country, the most logical reading of that phrase is that it refers to the moment of applying for entry into the country." *Id*. at 925. In finding that "'the time of application for admission' refers only to the moment in time when the immigrant actually applies for admission into the United States," the Ninth Circuit aligned its interpretation with that of the Fifth and Eleventh Circuits. *Id*. at 926-27. Of note is footnote 13 in *Torres*, which states:

> The government notes that 8 U.S.C. § 1225(b)(1)(A)(i) allows expedited removal of noncitizens who are "arriving in the United States" or certain noncitizens who are physically, but not lawfully, present in the United States if they are "inadmissible under section 1182(a)(6)(C) or 1182(a)(7)." Thus, the government argues, Torres need not have been "physically at the border" to have made an application for admission under § 1182(a)(7). *However, no case has held that § 1225(b)(1) allows an immigration officer to apply § 1182(a)(7) to noncitizens who are physically but unlawfully present in the United States*. Indeed, § 1182(a)(7), as opposed to § 1182(a)(6)(C), may apply only to noncitizens who are "arriving in the United States." 8 U.S.C. § 1225(b)(1). But because § 1225(b)(1) references only an immigration officer's authority, and not a court's authority, we need not resolve the

full scope of § 1225(b)(1)(A)(iii) in order to conclude that § 1182(a)(7) does not apply to a noncitizen in Torres's situation.

*Id.* at 929, n. 13 (emphasis added).[10]

In *Mayren*, the defendant was processed for expedited removal in 2010 after being apprehended near Naco, Arizona. 591 F. Supp. 3d at 693. The defendant entered the United States by "walking across the desert" and did not enter at a port of entry. *Id*. He was determined to be inadmissible under Section 212(a)(7)(A)(i)(I) of the INA. *Id*. Ultimately, in January 2020, he was indicted for a violation of 8 U.S.C. § 1326(a) and moved to dismiss the indictment by collaterally attacking his 2010 expedited removal order. *Id*. at 696. He argued that he should not have been deemed inadmissible under § 1182(a)(7) because "at the time he was apprehended, he had not submitted an application for admission, nor was he applying for entry at the border." *Id*. at 696-97. The court found that *Torres* was binding precedent that it had to follow. *Id*. at 698. The court rejected nearly identical arguments as those presented by the Government in this case, including that the court should ignore *Torres* in favor of *Thuraissigiam*. *Id*. at 698. The court found the Government's reliance on *Thuraissigiam* "misplaced" because the relevant INA provisions were merely briefly outlined in dicta. *Id*. While giving *Thuraissigiam* due consideration, the court found the Ninth Circuit's holding in *Torres* interpreting the meaning of "at the time of application for admission" under § 1182(a)(7) "squarely applie[d]" to its case. *Id*. The court concluded that the defendant's "due process rights were violated when he was placed in expedited removal proceedings because he was not inadmissible under § 1182(a)(7)." *Id*.

**V.    Analysis**

Both parties have presented compelling legal arguments regarding whether Defendant's 2012 expedited removal order violated due process by virtue of fundamental unfairness and prejudice. On the one hand, as the Government argues, courts have relied upon the DHS regulations governing expedited removal to substantiate findings of validity

---

[10] The *Mayren* court discussed "the sweeping breadth of footnote 13's potential" and the Government's motion, after *Torres* was decided, to amend or delete footnote 13. 591 F. Supp. 3d at 697. That request was denied. *Id*.

- 10 -

of expedited removal proceedings. Noncitizens apprehended near the border and soon after entry are arguably not entitled to the same level of due process protection as those present in the United States for longer periods of time. However, the Government has not cited a case addressing in depth the precise legal issues currently before this Court. On the other hand, Defendant relies on *Torres*, a case that does not involve expedited removal proceedings but that sets forth a clear interpretation of the "at the time of application for admission" statutory language at issue in this matter, and that questions whether § 1182(a)(7) can be applied to noncitizens who are physically but unlawfully present in the United States. 976 F.3d at 929, n.13. Although *Torres* does not explicitly discuss expedited removal, its language regarding the application of § 1182(a)(7) via § 1225(b)(1) is unequivocal, as discussed above.

*Torres* is binding Ninth Circuit precedent, which this Court cannot ignore. The *Mayren* court held, based on *Torres*, that a defendant who had not submitted an application for admission was not inadmissible under § 1182(a)(7), since there was no basis upon which to find that he lacked the requisite entry documents "at the time of application for admission." 591 F. Supp. 3d 696-97. The Government has not addressed the *Mayren* court's interpretation and application of the *Torres* holding to this Court's satisfaction, and this Court agrees with the *Mayren* court that *Torres*'s holding is clear and applicable here. Defendant is not inadmissible under § 1182(a)(7) because there is no basis upon which to find that he lacked the requisite entry documents "at the time of application for admission."

The Court has considered the Government's argument that the *Torres* court's finding of a due process violation should not apply to this case because that court's finding was dependent on the fact that Ms. Torres had been present lawfully in the United States prior to her removal upon a retroactive application of the relevant immigration laws. However, nothing in the *Torres* court's decision limits the application or scope of its holding to a person who has had legal status prior to entering removal proceedings. To the contrary, the *Torres* court included footnote 13 in its decision, stating that "no case has held that § 1225(b)(1) allows an immigration officer to apply § 1182(a)(7) to noncitizens

who are physically but unlawfully present in the United States." The *Torres* court did not limit its holding to non-citizens who were previously lawfully present in the United States; therefore, this Court may not read such a limitation into the law.

As a policy, this reasoning makes sense. Noncitizens who are physically, even if unlawfully, present in the United States, have access to multiple forms of immigration relief, such as voluntary departure and cancellation of removal, which require a determination by an immigration judge, not simply an immigration officer as set forth in § 1225(b)(1). Due process rights exist for any individual who is physically, even if unlawfully, present in the United States, and it is not the purview of this Court to determine the exact contours of those rights. While the DHS expedited removal regulation states that it applies to those individuals not continuously present in the United States for two years prior to being deemed inadmissible, the fact remains that, as the *Torres* court stated, no case has held that § 1225(b)(1) allows an immigration officer to apply § 1182(a)(7) to noncitizens who are physically but unlawfully present in the United States. There is no case applying the regulations in the manner that the Government seeks to have this Court do here. To the contrary, the most on-point authority, *Torres*, as well as the *Mayren* case, compel the Court to conclude that Defendant's 2012 expedited removal order violated Defendant's due process rights and was prejudicial because there was no basis on which to determine that Defendant was inadmissible under 8 U.S.C. § 1182(a)(7). *See Ochoa-Oregel*, 904 F.3d at 686 (removal on illegitimate grounds constitutes prejudice). Absent clear statutory authority or legal precedent stating that § 1225(b)(1) allows an immigration officer to apply § 1182(a)(7) to noncitizens physically but unlawfully present in the United States, the Court declines to reach that conclusion.

Accordingly,

**IT IS ORDERED** that Defendant's Objection (Doc. 35) is **granted**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Doc. 34) is **overruled** as set forth herein.

. . . .

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. 12) is **granted**. The Indictment in the above-captioned action against Defendant Jorge Luis Carrillo-Moreno is **dismissed**.

Dated this 24th day of April, 2023.

_____
Honorable Rosemary Márquez
United States District Judge